UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HASAN OMER HUSEN, | CASE NO. 2:26-cv-00498-JHC |
| Petitioner, | ORDER |
| v. | |
| KRISTI NOEM et al., | |
| Respondents. | |

# I

## INTRODUCTION

This matter comes before the Court on Petitioner Hasan Omer Husen's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

# II

## BACKGROUND

These facts are undisputed. Dkt. # 7 at 1. Petitioner is a 35-year-old, non-U.S. citizen. Dkt. # 5; Dkt. # 1 at 1. He is a national and citizen of Ethiopia and arrived in the U.S. on April 13, 2023. Dkt. # 5 at 1; Dkt. # 1 at 1; Dkt. # 1-1 at 6. Shortly after, Petitioner was served a

ORDER - 1

Notice to Appear charging him under 8 U.S.C. 1182(a)(6)(A)(i), and he was then released on his own recognizance (OREC) under 8 U.S.C. § 1226.  Dkt. # 5 at 2; Dkt. # 6-2.  Dkt. # 5 at 2; Dkt. # 1-3 at 6.  On June 2, 2023, through counsel, Petitioner applied for asylum and related relief, and his merits hearing was scheduled for 2028.  Dkt. # 5 at 2; Dkt. # 1 at 1.

It is uncontested that Petitioner did not violate the conditions of his release.  Dkt. # 7 at 2; *see generally* Dkt. # 4; Dkt. # 5; Dkt. # 6.  Still, on December 22, 2025, during a "targeted enforcement operation," Immigration and Customs Enforcement (ICE) encountered Petitioner in his vehicle.[1]  Dkt. # 5 at 2; Dkt. # 1-3 at 5.  After running Petitioner's license plate, ICE determined he had immigration violations and issued an arrest warrant for Petitioner.  Dkt. # 5 at 1-2.  ICE then initiated a vehicle stop, identified Petitioner, and took him into custody.  *Id*.  ICE then canceled Petitioner's OREC and transferred him to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, where he remains.  *Id*.

Upon detention, Petitioner's immigration court proceedings were transferred from Seattle to Tacoma and placed on an earlier schedule.  Dkt. # 5 at 3.  On January 27, 2026, an immigration judge (IJ) denied Petitioner's asylum, withholding of removal, and relief under the Convention Against Torture.  *Id*.  Petitioner has a pending appeal before the BIA on the removal order.  Dkt. # 7 at 2.

### III
#### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. §

---

[1] ICE was accompanied by Homeland Security Investigation special agents and Custom Border Patrol.

ORDER - 2

2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner invokes the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]"[2] The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

---

[2] Respondents say that they had discretionary power under 8 C.F.R. § 236.1(c)(9) to detain Petitioner. *See* Dkt. # 4 at 5. But "Petitioner does not claim to be entitled to a hearing consistent with a particular statute: he argues that the Due Process Clause requires it. This line of the Respondents' reasoning therefore does not address Petitioner's concern and cannot carry the day." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323 (W.D. Wash. 2025) (citing *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020)).

ORDER - 3

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[3]

A.  Statutory Framework

Before turning to the *Mathews* factors, it is necessary to determine the statute under which Petitioner is detained. Respondents' brief defines what persons fall within the definition of "seeking admission" under 1225(b) and says it applies to Petitioner's re-detention even though he resided in the U.S. for two and a half years before re-detention and was initially released on an OREC under 8 U.S.C. § 1226. *See* Dkt. # 4 at 8-9; *see also* Dkt. # 6-2. But as Respondents concede, this question was considered and decided in this District in *Lal v. Noem*, No. C26-0247-KKE, 2026 WL 369378, at *2 (W.D. Wash. Feb. 10, 2026).

In *Lal*, the petitioner had been released on parole, living in the U.S. for four years, and pursuing an asylum claim when he was re-detained. *Lal*, 2026 WL 369378, at *1. The court found "that Petitioner is properly detained under Section 1226(a) rather than Section 1225(b)" because the "'overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a

---

[3] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id*. at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id*. And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*.; see *Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1321 (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

noncitizen in Petitioner's position who has resided in the United States for many years'" and the application of Section 1225(b) is unpersuasive when the statutory scheme is read as a whole. *Id.* at *2 (citing *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases)). The Court agrees with this analysis.

Further, Petitioner's case is even stronger because he was released on an OREC that specifically says his release is "in accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations," and the government has not explained, and the Court sees no reason, for why Petitioner's re-detention could be conducted under a different statutory framework. Dkt. # 6-2; *see* S*ee Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (explaining that "release on recognizance" is "another name for 'conditional parole' under § 1226(a)"); *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *7 (W.D. Wash. Nov. 26, 2025) (petitioner's "release on an order of recognizance shows that she was initially detained under § 1226(a)").

For these reasons, Petitioner is detained under Section 1226(a) rather than Section 1225(b). The Court therefore turns to the *Mathews* factors considering this statutory underpinning.

B.  *Mathews* Factors

  1.  Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention,

or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

It is undisputed that Petitioner has a liberty interest in being free from detention. *See* Dkt. 4 at 7; Dkt. # 7 at 3. Still, Respondents argue that Petitioner's liberty interest is attenuated because Petitioner was released on an OREC and he was only released between April 19, 2023 and December 22, 2025. Dkt. # 4 at 7. But even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377-81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same).

The interest is only strengthened by the government's decision to release Petitioner. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release.") (citing *Morrissey*, 408 U.S. at 482). Petitioner was free from detention for over two and a half years. This is enough time to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthen his interest in being free from detention. *Pablo Sequen v. Albarran*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon*, 459 U.S. at 32-33) (cleaned up).

In revoking Petitioner's release, the government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey*, 408 U.S. 471 at 482. Accordingly, the first *Mathews* factor favors Petitioner.

ORDER - 6

2.      Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Petitioner says his re-detention occurred because of a "summary revocation" of his OREC without cause, notice, or a hearing before a neutral arbitrator. *See* Dkt. # 7 at 4; Dkt. # 1 at 15.[4] The Court agrees that the risk of erroneous deprivation of his liberty interest in the absence of a pre-detention hearing is high.

Respondents say, and the undisputed facts show, "Petitioner was arrested pursuant to a valid administrative warrant issued only after officers personally observed him entering a vehicle during a targeted enforcement operation and confirmed his immigration violation via realtime registration query." Dkt. # 4 at 7. Stated another way: Petitioner was in or around his car; and ICE officers—for reasons unstated—ran his license plate, discovered he had unspecified "immigration violations," and then via an administrative warrant, arrested him at the scene. They then took Petitioner to a secondary location to interview him where he "admitted" "he is of Ethiopian citizenship, that his parents are not United Citizens and that he fears return to Ethiopia." Dkt. # 5 at 2.

Based on this, for reasons unknown and unstated, ICE cancelled Petitioner's OREC, and he was immediately transferred to NWIPC. It is unclear from the record if Petitioner had an opportunity to call his attorney or to be heard. It is also unclear from the record what these

---

[4] Much of the Petition focuses on inapplicable regulations and relies on caselaw without proper citations. *See* Dkt. # 1; Dkt. # 7 at 2. But the Petition and the Traverse make an adequate showing that Petitioner can satisfy his burden of proof. Nevertheless, the Court urges Petitioner's counsel to consider the facts of each case closely and follow proper citation formats that include a pincite to an official reporter or electronic database in future proceedings.

ORDER - 7

"immigration violations" were; the only violation in Petitioner's record is his initial entry and charge with inadmissibility, which that Government was already aware of when they released him in 2023. *See* Dkt. # 6-3; Dkt. # 6-2. The only procedure Respondents point to is the administrative warrant.[5] *See* Dkt. # 4 at 7. These sparse procedures risked the erroneous deprivation of Petitioner's liberty interests and violated them. The second factor favors Petitioner.

      3.      Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened government interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

Respondents' arguments for their interest stem from 8 U.S.C. § 1225(b)(2), but as the Court has already explained, that statute is inapplicable to the Petition. *See* Dkt. # 4 at 8. Still, the Court acknowledges that the government likely has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But it is uncontested that Petitioner has no criminal history or even a violation of his OREC. Petitioner did not fail to appear for an immigration proceeding or even have one scheduled until 2028. This *Mathews* factor also favors Petitioner. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources

---

[5] Respondents' reliance on the IJ's merits hearing is inapt. It did not address re-detention. *See* Dkt. # 6-8. Regardless, Petitioner's ongoing removal proceedings are occurring now rather than in 2028 because of the re-detention and thus cannot be used as support for that re-detention. For the same reason, Respondents' argument that Petitioner's detention is directly tied to moving removal proceedings lacks merit. *See* Dkt. # 4 at 7.

ORDER - 8

(money and time) to provide Petitioner notice and hearing on [release conditions] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue").

* * *

In sum, all three *Mathews* factors favor Petitioner. The government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution.[6] As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief.[7] 28 U.S.C. § 2241(c).

## IV
### Conclusion

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be IMMEDIATELY released from custody subject to the same conditions of release that governed before he was re-detained. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

//

//

---

[6] For this reason, the Court need not address Petitioner's argument under the Administrative Procedure Act.

[7] The remedy here was not thoroughly briefed, but because the Court has found a violation of the Constitution, it need not decide whether a bond hearing would be appropriate in Petitioner's re-detention. *See Sarwari v. Wamsley,* No. 2:26-CV-00121-TL, 2026 WL 279968, at *6 (W.D. Wash. Feb. 3, 2026) ("As other courts in this Circuit have found, a post-deprivation bond hearing under these circumstances 'cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.'"); *see also Lal,* 2026 WL 369378, at *3-4 ("[T]he Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release" and finding that before another re-detention Petitioner is entitled to a pre-deprivation hearing).

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 6th day of March, 2026.

*John H. Chun*

John H. Chun
United States District Judge